PER CURIAM:
Defendants Marienne Martinez and Maritza Cruz-Ojeda appeal their jury convictions of knowingly and intentionally importing 2.918 grams of cocaine into the United States [21 U.S.C.A. §§ 952(a), 960(a)(1)], and of knowingly possessing the same with intent to distribute [21 U.S.C.A. § 841(a)(1)]. They argue the Government failed to prove they knew their luggage contained cocaine when they came through customs, an illegal search, a pretrial nondisclosure violation by the Government, and a trial error in permitting a Government witness to indicate that defendants made adverse statements after Miranda warnings. Finding sufficient evidence to support the jury verdict and insufficient record support for the other errors argued, we affirm.
The defendants traveled by air from Caracas to Kingston, then to Nassau, and finally to Miami. At .the customs preclearing station in Nassau, a United States Customs Inspector, checked their several pieces of luggage. A probe inserted into a suitcase brought out a white substance which a field test showed to be cocaine. The defendants were not apprehended, but allowed to board their plane for Miami. The customs inspector informed Miami customs of his findings with a description of the defendants, their luggage, baggage numbers, flight number, and time of arrival. Upon arrival at Miami International Airport, defendants obtained their baggage from the baggage claims *962 area with the help of a porter and loaded it into the back of a station wagon. Having been under the constant observation of a Miami customs patrol officer, the defendants were then requested to go to the customs area with their luggage. Inspection of two zippered bags disclosed the presence of cocaine concealed beneath an unusual hard linoleum lining which was removed by breaking open the frames.
Defendants argue that when they were in the parking lot loading their bags into the waiting station wagon, they had already passed beyond the functional equivalent of the border and could not be searched without a warrant. Having been under constant surveillance after crossing the border, however, and still being in the airport area, defendants were clearly subject to a customs search for which no warrant is required. United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1976); Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Brom, 542 F.2d 281 (5th Cir. 1976); United States v. Fiores, 531 F.2d 222 (5th Cir. 1976).
The defendants having brought the cocaine-laden luggage into the United States and having claimed the two zippered bags as theirs, the jury could find they knew of the contents. United States v. Squella-Avendano, 478 F.2d 433 (5th Cir. 1973). See also United States v. Oviedo, 525 F.2d 881, 885 n.10 (5th Cir. 1976).
The complaint that the Government used an undisclosed and prejudicial statement of the defendant in violation of the standing discovery rule and Rule 16 of the Federal Rules of Criminal Procedure stems from this occurrence at trial, during the Government’s direct examination of a customs officer:
Q. Was there anyone with the two defendants, or were they alone?
A. No. There was a young lady who I believe was the sister of Miss Martinez who was brought down to the room and I had her sit down and just wait until we had this situation resolved.
And she was sitting there and waiting for the decision.
And at that time I believe Miss Martinez came over to me and asked me who was in charge of this particular Customs operation. I told her I was in charge. And she said, “That lady over there is my sister. She has nothing to do with this. Let her go. She has nothing to do with it.”
She was visibly upset and distraught, and I at that time told her she would have to wait until we finished this whole thing; that I had no idea of what the connection her sister had with this case.
MR. WEINSTEIN: Your Honor, may we approach the Bench?
THE COURT: All right.
After defendant’s motion for exclusion and mistrial, considerable testimony was taken and discussion held outside the jury’s presence as to when the Government learned of the statement, when it decided to use the testimony, and what prejudice the defendant incurred by not learning of the statement until trial.
The defendant’s statement had not been recorded and was not contained in any written report. The district court held defendant’s oral statement was spontaneous and voluntary and not in response to interrogation by a Government agent. See Fed.R. Crim.P. Rule 16(a)(1)(A) (upon request, the Government shall permit the defendant to inspect: “any oral statement which the government intends to offer in evidence at the trial made by the defendant . in response to interrogation . . . .”). See also United States v. Manetta, 551 F.2d 1352 (5th Cir. 1977); United States v. Green, 548 F.2d 1261, 1266-1267 (6th Cir. 1977).
Refusing to condone the way in which the Government handled the matter, however, the court focused on the claimed prejudice: the inability of defense counsel to refute the statement by calling defendant’s sister as a witness. To eliminate this prejudice, the court had the sister brought to the *963 courthouse and made available to the defendants and their counsel during a three-hour recess after the close of the Government’s case. She was not, however, called as a defense witness.
Under these circumstances, the court committed no error under Rule 16, and no abuse of discretion in finding that there was no violation of the standing discovery rule.
The defendants argue that the Government introduced the following testimony in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):
Q. Did either of the defendants make any statements in your presence?
A. No, not at that time. We read them both their rights.
Defense counsel immediately moved for a mistrial on the ground the testimony constituted an impermissible comment on silence after Miranda warnings. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). The district court denied the motion on the ground there was nothing wrong within the context of the testimony elicited from the witness. The court’s percipience was confirmed at trial when the witness thereafter testified to statements made by defendants at a later time. Thus, the fact that defendants had made statements and the “no, not at that time” of the witness could not have carried with it the kind of comment on silence that is condemned in Doyle and Hale. Cf. United States v. Sklaroff, 552 F.2d 1156 (5th Cir. 1977) (single spontaneous remark from witness which did not contradict exculpatory story was harmless error notwithstanding mention of defendant’s post-Miranda silence); United States v. Davis, 546 F.2d 583 (5th Cir. 1977) (where there was a trivial infraction of the Doyle rule which was not linked to the defendant’s exculpatory story, mention of the defendant’s silence was harmless error).
Emphasizing the “not at that time” part of the testimony, defendants on appeal argue that it was improper and prejudicial for the Government witness thus to indicate that the defendants made statements after being warned of their Miranda rights. They argue that this comment raises an impermissible inference in the mind of the jury that some statement was made after the defendants had been warned according to Miranda. This remark cast a burden upon the defendants, they contend, to either produce the statement or permit the inference to remain with the jury that the statement was unfavorable. Of course, the Government is not prohibited from introducing statements made by a defendant after receiving Miranda warnings. See Miranda v. Arizona, supra, 384 U.S. at 478, 86 S.Ct. 1602. In this case, any dilemma the defendants may have felt to produce the statements or leave an inference with the jury that the statements were adverse was dissolved when the Government itself offered the statements through the same witness. Therefore, no impropriety occurred, whether the testimony is viewed in part or as a whole.
AFFIRMED.