UNITED STATES of America,
Plaintiff–Appellee,

v.

Noe LOPEZ–GONZALEZ,
Defendant–Appellant.

No. 89–2848.

United States Court of Appeals,
Fifth Circuit.

Oct. 30, 1990.

L. Aron Pena, Pena, McDonald, Prestia & Ornelas, Edinburg, Tex., for defendant-appellant.

Paula C. Offenhauser, John G. Crews, Asst. U.S. Attys., Houston, Tex., Henry K. Oncken, U.S. Atty., for plaintiff-appellee.

Before RUBIN, GARWOOD and HIGGINBOTHAM, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Noe Lopez–Gonzalez (Lopez–Gonzalez) was convicted, on a conditional plea of guilty under Rule 11(a)(2) of the Federal Rules of Criminal Procedure, of possession of more than one hundred kilograms of marihuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). In this appeal from his conviction, Lopez–Gonzalez challenges only the district court's denial of his motion to suppress evidence, contending

that the evidence in question was the result of an illegal search. We affirm.

### Facts and Proceedings Below

■ An informant told United States Border Patrol officers that two vehicles, a van of unspecified color and a dark blue pickup truck with a camper shell, would depart Santa Maria, Texas, in the early morning hours of March 23, 1989. The informant said that the vehicles would be transporting marihuana and travelling from south of the Santa Maria area. Santa Maria, a town approximately two miles from the Rio Grande River, is in an area notorious for drug trafficking and alien smuggling. Although the informant had given information to the authorities in the past, Border Patrol Agent William A. Cantu (Cantu), who arrested Lopez–Gonzalez and was the only government witness at the suppression hearing, testified that he did not know the informant's identity or whether this past information (which had been given to others) was accurate.[1]

The informant spoke with Patrol Agent Webster Ozuna by telephone, who relayed the tip to Supervisory Patrol Agent Dale Garrett (Garrett), who in turn relayed it to Cantu, the arresting agent. Border Patrol surveillance agents were posted along the Rio Grande River and the highway north of Santa Maria. At the river, Garret and Patrol Agent Javier Rios observed twenty to twenty-five individuals carrying large bales or sacks across the river and toward Santa Maria on foot.[2] This information was relayed to Cantu, who was in position on the highway just north of Santa Maria. He was in uniform and in a marked Border Patrol vehicle.

A little after 5:00 a.m., which was approximately one hour after the other agents had observed the bales crossing the river, Cantu observed a red van travelling north and approaching his position on Highway 2556. His position was three or four miles from the border. Cantu radioed

the river agents to ask whether they had seen a red van that morning. Less than a minute later and before anyone replied, Cantu saw a dark blue pickup truck with a camper shell proceeding north on this same road. The red van and the blue pickup truck were the only two vehicles that passed Cantu that morning. He saw other vehicles, but they stopped short and turned around and did not come close enough to Cantu to permit identification in the darkness.

Cantu followed the blue pickup and noticed that it was "heavy in the rear." Cantu then turned on his red grill lights to signal the pickup to stop. It was neither speeding nor weaving on the road. Nor could Cantu see any marihuana in the vehicle. Rather than stop, the pickup accelerated and continued north on Highway 2556 at a rate of speed ranging from seventy to ninety miles per hour. Cantu followed in pursuit for fifteen to thirty miles, until the vehicle stopped because of mechanical problems. The driver of the vehicle was Lopez–Gonzalez. While securing Lopez–Gonzalez, Cantu observed large bales in the rear of the pickup and smelled marihuana. He searched the vehicle and found approximately 740 pounds of marihuana.

Lopez–Gonzalez was indicted for conspiracy to possess more than one hundred kilograms of marihuana with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) (count 1), and for possession of more than one hundred kilograms of marihuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (count 2). He moved to suppress the evidence seized from his vehicle, asserting that the seizure violated the Fourth Amendment because (1) Cantu lacked reasonable suspicion to stop the vehicle, and (2) Cantu lacked probable cause to search the vehicle after the stop. The district court, after holding an evidentiary hearing, denied the motion on May 26th, and Lopez–Gonzalez thereafter entered a

---

**1.** While some of Cantu's testimony was hearsay, this did not render it improper for purposes of the suppression hearing. *See, e.g., United States v. Sanchez,* 689 F.2d 508, 509 n. 2 (5th Cir.1982).

**2.** No agent was able to see what ultimately happened to these bales, nor did any agent observe the bales being loaded onto any vehicle.

conditional guilty plea to count 2 in exchange for the dismissal of count 1, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. The conditional guilty plea reserved the right to appeal the denial of the motion to suppress. The district court accepted the plea and thereafter imposed a sixty-month sentence to be followed by three years of supervised release.

## Discussion

Lopez–Gonzalez in this appeal does not challenge the search of his vehicle after it had been stopped as lacking probable cause. His sole claim is that the investigatory pursuit and stop of his pickup truck was without reasonable suspicion and was therefore unlawful.

 Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, a temporary investigative stop is proper if the stop is based upon reasonable suspicion "that criminal activity may be afoot."[3] 88 S.Ct. at 1884. The *Terry* rationale also permits the investigatory detention of a vehicle. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 1396–1401, 59 L.Ed.2d 660 (1979). In *United States v. Gomez*, 776 F.2d 542 (5th Cir.1985), we explained the reasonable suspicion required for an investigatory stop:

"A valid investigatory stop under *Terry* and its progeny, in simplest terms, requires a reasonable conclusion by the police officer, in light of his experience, that some kind of criminal activity is taking place. Reasonable suspicion must be based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' Finally, these facts must 'be judged against an objective standard: Would the facts available to the officer at the moment of [the] seizure ... "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *Id.* at 546 (quoting *Terry*, 88 S.Ct. at 1880) (citations and footnote omitted).

 The government relies in part upon the information contained in the informant's tip. In *Alabama v. White*, ⸺ U.S. ⸺, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), a case decided after the briefs in this case were filed, the Supreme Court considered whether an anonymous tip, "as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* 110 S.Ct. at 2414. The Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), had already adopted a "totality of the circumstances" approach to determining whether an informant's tip establishes probable cause; *White* extended this holding to the reasonable suspicion analysis for an investigatory stop. 110 S.Ct. at 2415–16. The Supreme Court concluded that *White* presented a "close case" but that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop. *Id.* at 2417.

The Supreme Court in *White* found it significant that the tip " 'contained a range of details relating not just to easily obtained facts and conditions existing at the

---

3. Reasonable suspicion is not required for a stop at the border or "its functional equivalent." *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *Almeida–Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973); *see Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). The district court did not treat the stop under that theory, and it does not appear to be applicable to this case. Nor did the district court evaluate the stop under the "extended border search" doctrine, *see United States v. Espinoza–Seanez*, 862 F.2d 526,

530–32 (5th Cir.1988), and the government does not attempt to support the stop under that doctrine. Accordingly, we do not address the extended border search doctrine. We do note, however, that at least some factors that are relevant to the reasonable suspicion inquiry for a stop claimed to qualify as an extended border search may also be relevant to the reasonable suspicion inquiry as applied to other stops, particularly those in which the transportation of contraband is suspected. *See United States v. Miranda–Perez*, 764 F.2d 285, 287–89 (1985).

time of the tip, but to future actions of third parties ordinarily not easily predicted.'" *Id.* (quoting *Gates,* 103 S.Ct. at 2335–36). It concluded that "the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations," including the claim that the object of the tip was engaged in criminal activity. *Id.*

Although the tip here is not wholly lacking in detail, it is clearly less detailed than that in *White.* Nevertheless, several indicia of reliability here adequately make up for this relative paucity of detail. Although the informant's name was never disclosed, Cantu's testimony at the hearing on the motion to suppress indicated that the informant had provided information to the authorities on a prior occasion. Cantu was unable to testify to the reliability of the informant's previous tip, but the fact that the informant was not wholly unknown to the authorities makes this at least a slightly "stronger case than obtains in the case of an anonymous telephone tip." *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). *Williams* recognizes that tips from known informants are more likely to be credible and are thus entitled to greater weight in the *Terry* stop reasonable suspicion analysis. 92 S.Ct. at 1923–24. As the Supreme Court reiterated in *White,* the veracity of a tip supplied by an anonymous informant "is 'by hypothesis largely unknown, and unknowable,'" *id.* 110 S.Ct. at 2415 (quoting *Gates,* 103 S.Ct. at 2332), because such a tip "'provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable.'" *Id.* (quoting *Gates,* 103 S.Ct. at 2326). But an informant who has previously furnished the authorities information presumably knows that they know who he is, and hence is aware he will not have the protection from the consequences of prevarication that anonymity would afford.

In *White* the police did not observe any illegal activity before they stopped the defendant, but the court nevertheless found reasonable suspicion for the stop because of the correlation of the defendant's actions with those predicted in the anonymous tip. As the dissent pointed out, her actions could have been completely innocent. *Id.* 110 S.Ct. at 2417–18 (Stevens, J., dissenting). It is particularly significant that in this case the Border Patrol agents *did* observe *illegal* activity in corroboration of the tip before the stop: the movement of the suspicious bales across the Rio Grande River and toward Santa Maria. This illegal activity took place about three miles from where Cantu subsequently spotted and initiated pursuit of Lopez–Gonzalez's vehicle.

The informant's tip was also corroborated by other evidence known to Cantu at the time of the stop. The informant had predicted that two vehicles, a van and a dark blue pickup truck with a camper shell, would depart Santa Maria in the early morning hours of March 23, 1989, laden with marihuana. Early that morning, as predicted, two vehicles matching that description passed Cantu's position on the highway north of Santa Maria.[4] First a red van passed Cantu, followed less than a minute later by a dark blue pickup truck with a camper shell. These were the only vehicles that passed Cantu's position that morning, and they did so about an hour after other Border Patrol agents had observed the numerous suspicious bales being transported surreptitiously and illegally across the Rio Grande River and north towards Santa Maria. And, before Cantu signalled the blue pickup to stop, he observed that the vehicle "was heavy in the rear." Finally, the district court properly took judicial notice that the Santa Maria area is notorious for drug trafficking and near the border with Mexico. Although "particularized suspicion ... that the particular individual being stopped is engaged in wrongdoing" is also required, *Cortez,*

---

**4.** Lopez–Gonzalez argues that the observation of the van and blue pickup truck north of Santa Maria does not corroborate the tip because the informant predicted that they would be travelling south of Santa Maria. We disagree. The

Border Patrol agents could reasonably conclude that a marihuana smuggler would travel from the border through Santa Maria and continue north.

101 S.Ct. at 695, judicial notice of this fact lends support to our conclusion that reasonable suspicion existed for the stop.

■ We acknowledge that some of our cases have stated that "little weight" or "no weight" is to be given to a vehicle riding low or appearing to be heavily loaded when determining whether reasonable suspicion exists for a stop. *United States v. Melendez–Gonzalez*, 727 F.2d 407, 412 (5th Cir.1984) ("not ... determinative"); *United States v. Orona–Sanchez*, 648 F.2d 1039, 1042 (5th Cir. Unit A 1981) ("no weight"); *United States v. Pacheco*, 617 F.2d 84, 86 (5th Cir.1980) ("little weight"); *United States v. Lamas*, 608 F.2d 547, 549 (5th Cir.1979) (not sufficient). *Lamas* cites no authority at all on this issue; *Pacheco* and *Orona–Sanchez* cite only *Lamas* in support; and *Melendez–Gonzalez* cites only these three cases just named in support. Nonetheless, numerous decisions of ours handed down before *Lamas* indicate that the fact that a vehicle appears to be heavily loaded *is* a factor that may properly weigh in favor of justification for a stop. *United States v. Sarduy*, 590 F.2d 1355, 1358 & n. 4 (5th Cir.1979) ("We have consistently regarded the fact that a vehicle is heavily loaded as a factor justifying a stop") (citing cases [5]). At least three cases decided after *Lamas* have also so stated. *Espinoza–Seanez*, 862 F.2d at 531 ("riding low in the rear"); *United States v. Kohler*, 836 F.2d 885, 888 (5th Cir.1988) (whether vehicle is heavily loaded in border area is factor to consider); *United States v. Garcia*, 732 F.2d 1221, 1225 (5th Cir.1984) ("camper appeared heavily loaded"). We cannot reconcile *Lamas* or the cases that have relied on it—at least not insofar as they preclude the assignment of *any* weight to this factor—with *Sarduy*. As *Sarduy* precedes *Lamas*, we are bound by *Sarduy*. See, e.g., *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1166 (5th Cir.1984). We also observe that the Supreme Court stated in *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), that in the border area the fact that "[t]he vehicle may appear to be heavily loaded" is a consideration which may properly contribute to reasonable suspicion that it is transporting illegal aliens. 95 S.Ct. at 2582. It is reasonable to conclude from this language that appearing heavily loaded may also properly be a factor where, as here, the vehicle (actually also in the border area) is suspected of transporting contraband of substantial weight, and we have so held. *United States v. Hosch*, 577 F.2d 963, 966 (5th Cir.1978).[6] We believe the district court was entitled to consider Cantu's observation that the vehicle "was heavy in the rear."[7] Such an observation indicated that the vehicle was carrying something heavy and tended to corroborate the indications from the informant's tip and the observations of the other agents at the river that the vehicle would be carrying a large load of marihuana.

### Conclusion

Under the totality of the circumstances, including the informant's tip, Cantu had the reasonable suspicion required for a legal *Terry* stop of the pickup truck being

---

5. *United States v. Hosch*, 577 F.2d 963, 966 (5th Cir.1978) (rear end "riding very low"); *United States v. Lopez*, 564 F.2d 710, 712–13 (5th Cir. 1977) ("Persons hiding ... tend to make a trunk ride low") (dictum): *United States v. Gandara–Nunez*, 564 F.2d 693, 694 (5th Cir.1977) (car riding low); *United States v. Payne*, 555 F.2d 475, 477–78 (5th Cir.1977) (camper looked and handled as if heavily loaded); *United States v. Barnard*, 553 F.2d 389 (5th Cir.1977) (heavily loaded); *United States v. Garza*, 544 F.2d 222, 224–25 (5th Cir.1976); *United States v. Walker*, 522 F.2d 194 (5th Cir.1975).

6. The Court in *Brignoni–Ponce* suggests that its holding is applicable to smuggling cases in its statement, in the same paragraph, that "[i]n all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry *and smuggling.*" 95 S.Ct. at 2582 (emphasis added). The Supreme Court later indicated in another case, albeit in dictum, that a "heavily loaded" appearance is a factor which would contribute to justification for an investigatory stop of a vehicle suspected of carrying marihuana. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 1573 n. 3, 84 L.Ed.2d 605 (1985).

7. We do not suggest, nor did the district court, that the appearance of being heavy in the rear would by itself justify reasonable suspicion.

driven by Lopez–Gonzalez.[8] We are therefore unable to conclude that the district court erred in denying Lopez–Gonzalez's motion to suppress, and the judgment of conviction is accordingly

AFFIRMED.

---

**8.** Because we conclude that Cantu had the requisite reasonable suspicion from the time he first signalled Lopez–Gonzalez to stop, we need not consider whether Lopez–Gonzalez's refusal to stop and high-speed flight provided reasonable suspicion for the investigatory stop. Our conclusion that the stop was justified is reached without giving any weight whatever to those matters. As indicating that such matters may not be considered, see *United States v. Sanchez,* 689 F.2d 508, 514 (5th Cir.1982); *United States v. Frisbie,* 550 F.2d 335, 338 (5th Cir.1977). *But see Sharpe,* 105 S.Ct. at 1573 & n. 3.