701 So.2d 424 (1997)
The STATE of Florida, Appellant,
v.
Alberto MIRANDA, Appellee.
No. 97-667.
District Court of Appeal of Florida, Third District.
November 12, 1997.
Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Maria E. Lauredo, Assistant Public Defender, for appellee.
Before NESBITT, COPE and FLETCHER, JJ.
COPE, Judge.
This is an appeal of an order entered by the circuit court granting a motion to suppress physical evidence.
On October 15, 1996, Detective Alberto Somoano of the Metro-Dade Police Department received a tip from a confidential informant that a one-armed white Latin male in his fifties would arrive in a taxi at a particular Denny's Restaurant between 7:30 p.m. and 8:00 p.m. that evening. According to the informant, who had previously given unverified information to Detective Somoano, the *425 individual would be carrying five ounces of powdered cocaine.
At the appointed time, Detective Somoano and his partner, Detective George Llambes, both of whom were dressed in plain clothes, arrived at a gas station across the street from the restaurant. They observed defendant-appellee Alberto Miranda, who matched the given description precisely, already standing by a telephone on the restaurant's sidewalk. Exiting their unmarked vehicle, the detectives crossed the street and approached Miranda. The detectives showed their badges and, in a conversational tone, identified themselves as narcotics detectives. Detective Somoano told Miranda that he had received information that Miranda was in possession of some type of powdered cocaine. Detective Somoano then asked Miranda whether it would be all right if they searched him for the cocaine and for weapons. Miranda gave his consent to the request. In Miranda's pocket the detectives discovered a plastic bag containing five ounces of cocaine.
After being charged with trafficking in cocaine, Miranda filed a motion to suppress the evidence. The trial court granted the motion, reasoning that the detectives had performed an investigative stop without having a reasonable suspicion, and that the consent to search was thereby tainted.
On appeal, the State argues that this was a consensual encounter, and that Miranda was not seized within the meaning of the Fourth Amendment. The State argues alternatively that even if this was an investigative stop, it was entirely permissible because the detectives possessed the required reasonable suspicion. We agree with the latter contention and find it unnecessary to address the former. For present purposes, we will assume (but do not decide) that this was an investigative stop.
The tip in this case was provided to Detective Somoano by a confidential informant who was personally known to him and had provided information two to four times in the past. The detective had not been able to verify the informant's past information, thus, the informant was one whose reliability had not been established. Since that was so, the trial court ruled that the tip in this case would be treated as if it were simply an anonymous tip. See generally Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
The case law, however, draws a distinction between a true anonymous tip and the situation in which there is a specific confidential informant whose reliability has not been determined. In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), an individual approached a police officer at 2:15 a.m. and told him that a person seated in a nearby vehicle was carrying a gun in his waistband and also possessed narcotics. See id. at 144, 92 S.Ct. at 1922. In sustaining the investigatory stop, the Supreme Court said:
[W]e believe that Sgt. Connolly acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had Sgt. Connolly's investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.
Id. at 146-47, 92 S.Ct. at 1923-24 (footnote and citations omitted); see also Alabama v. White, 496 U.S. at 328, 110 S.Ct. at 2415 (summarizing Adams).[1]
*426 In United States v. Lopez-Gonzalez, 916 F.2d 1011 (5th Cir.1990), an informant told the Border Patrol that two specifically described vehicles would depart Santa Maria, Texas (a border town described as "notorious for drug trafficking"), in the early morning hours on a specific date, carrying marijuana. See id. at 1011. The informant had provided information in the past, but the reliability of the informant had not been established. See id. at 1011, 1014. The investigatory stop was upheld on authority of Adams v. Williams.
[The officer] was unable to testify to the reliability of the informant's previous tip, but the fact that the informant was not wholly unknown to the authorities makes this at least a slightly "stronger case than obtains in the case of an anonymous telephone tip." [Adams v.] Williams recognizes that tips from known informants are more likely to be credible and are thus entitled to greater weight in the Terry[2] stop reasonable suspicion analysis. As the Supreme Court reiterated in [Alabama v.] White, the veracity of a tip supplied by an anonymous informant "is `by hypothesis largely unknown, and unknowable,'" because such a tip "`provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable.'" But an informant who has previously furnished the authorities information presumably knows that they know who he is, and hence is aware he will not have the protection from the consequences of prevarication that anonymity would afford.
Id. at 1014 (citations omitted).
Similarly, in State v. Evans, 620 So.2d 802 (Fla. 2d DCA 1993), an untested informant told a deputy sheriff that in thirty minutes a specifically named white male would leave a specific house in Bonita Springs, Florida, carrying a quantity of marijuana to transport to Naples, Florida, in one of two specifically described cars parked in front of the house. A deputy went to the location, which conformed to the description. The deputy observed a white male come out of the house, carrying a package. The man and a companion entered one of the cars and took the interstate highway toward Naples. The deputy made an investigatory stop and procured a consent to search. In upholding the investigatory stop, the court said:
A citizen who provides identification and presents information in person can be better evaluated by a police officer than an unknown voice over the telephone. Such an informant, under most circumstances, can be located after a stop to account for any deliberate false information. For purposes of a Terry stop, any slight weakness in the factual information provided in this case or in the predicted behavior is overcome by the fact that the information was provided by an informant whose identity was known and who provided the information in person.
Id. at 802 (citations omitted).
In the present case, an informant known to the detective stated that a specifically described individual would arrive at a specific restaurant at a specific time, and would be carrying an amount of cocaine in his person. The time, place, and description matched the information given. Under the cited authorities, *427 there was a reasonable suspicion to justify an investigative stop.
The order suppressing evidence is reversed and the cause remanded for further proceedings consistent herewith.[3]
NOTES
[1] The Alabama v. White court elaborated on the reasonable suspicion standard as follows:

"The officer [making a Terry stop] ... must be able to articulate something more than an `inchoate and unparticularized suspicion or "hunch."' [Terry, 392 U.S.,] at 27 [88 S.Ct. at 1883]. The Fourth Amendment requires `some minimal level of objective justification' for making the stop. INS v. Delgado, 466 U.S. 210, 217 [104 S.Ct. 1758, 1763, 80 L.Ed.2d 247] (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means `a fair probability that contraband or evidence of a crime will be found,' [Gates, 462 U.S., at 238, 103 S.Ct., at 2332], and the level of suspicion required for a Terry stop is obviously less demanding than for probable cause."
Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Adams v. Williams, supra, demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a Terry stop.
496 U.S. at 329-30, 110 S.Ct. at 2416 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)).
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] In view of the foregoing, we need not consider the details of the trial court's analysis of the law governing anonymous tips. We note, however, that the trial court relied heavily on Lewis v. State, 645 So.2d 1081 (Fla. 2d DCA 1994), which (in turn relying on earlier Second District cases) appears to state that an anonymous tip can never provide a founded suspicion to make an investigatory stop unless the officer makes an independent observation of criminal activity. See id. at 1081-82. Although Lewis reaches a correct result on its stated facts, the language is so broad that it apparently is in conflict with the United States Supreme Court's decision in Alabama v. White. In Alabama v. White, the anonymous tip was found to be sufficiently corroborated to justify an investigatory stop, even though all of the activity observed by the police was innocent in nature. See 496 U.S. at 330-32, 110 S.Ct. at 2416-17.

Because the law of anonymous tips is not controlling in the present case, we need not explore the issue in more detail. We only point out that the decisions in Lewis, Powell v. State, 592 So.2d 785 (Fla. 2d DCA 1992), and Cunningham v. State, 591 So.2d 1058 (Fla. 2d DCA 1991), need to be read with great caution, and Alabama v. White is controlling to the extent of any inconsistency.