**TOLI TAVITA FUIMAONO, Appellant,**

**v.**

**AMERICAN SAMOA GOVERNMENT, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 05-01

November 26, 2002

Before RICHMOND, Associate Justice, WALLACE,[*] Acting Associate

[*] The Honorable J. Clifford Wallace, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation of the Secretary of, the Interior.

Justice, MOLLWAY,[**] Acting Associate Justice, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Appellant, Bentley C. Adams III, Asst. Public Defender
         For Appellee, John W. Cassell, Asst. Attorney General

OPINION AND ORDER

Fuimaono was convicted by a jury of unlawful possession of the controlled substance of marijuana and possession of prohibited weapons. On appeal, he argues that his convictions should be reversed because 1) his prosecution was barred by double jeopardy; 2) evidence seized from an illegal *Terry* Stop was used as the basis of the prosecution; and 3) the evidence was insufficient to sustain a guilty verdict. We affirm Fuimaono's conviction.

## I. Factual Background

This case arose out of a traffic stop by police officers Aitasi Samoa and Abel Penitusi. On March 10, 2000, around 9:15 a.m., the two officers were patrolling the Fagatogo marketplace area. The officers received a radio dispatch from the Central Police Station in Fagatogo directing them to investigate a public peace disturbance at Tufono's Laundromat and relaying the following information: an argument had occurred between a commercial bus driver and the complainant, the manager of the laundromat; two other men were drinking alcohol inside the bus; and the license number of the bus. The dispatch did not include the complainant's name, but she had identified herself when she called the police headquarters.

Moments after receiving the dispatch, the two officers spotted a bus entering the main public highway from a direction consistent with having come from the laundromat. The license plate number and the number of occupants matched the complainant's description, so they pulled the bus over. The officers did not witness the bus driver commit any traffic infractions and stopped the bus based solely on the dispatch information.

Fuimaono was driving the bus. When stopped, he was wearing a waist pouch, and a briefcase was at his left side. Officer Samoa smelled alcohol coming from Fuimaono. Police officers Liusila Brown and Timali Polasi arrived a few minutes later and also smelled alcohol. Officer Brown became the lead investigator. Fuimaono, wearing the

[**] The Honorable Susan Oki Mollway, District Judge, United States District Court for the District of Hawaii, sitting by designation of the Secretary of the Interior.

waist pouch, was still in the driver's seat of the bus, and the briefcase was at the same location. After Fuimaono failed a field sobriety test, Brown arrested him for driving under the influence of alcohol or other drugs and cited him for licensing violations. During a pat-down search, Brown retrieved a plastic bag protruding from Fuimaono's pocket containing a substance the officer recognized as marijuana. Brown also removed what he believed to be a marijuana cigarette from the same pocket. Brown kept the removed items in his possession.

Fuimaono resisted further search, was handcuffed, and taken to the Central Police Station. Brown brought along the briefcase. At the station, he removed the waist pouch from Fuimaono and, while putting back the two items taken at the arrest scene into the pouch, he noticed another apparent marijuana cigarette inside. He then turned Fuimaono, the waist pouch and its contents, and the briefcase over to Sgt. Tauama T. Fe'a, Jr., a police vice and narcotics officer.

Sgt. Fe'a searched the waist pouch and found the two apparent marijuana cigarettes, the plastic bag containing apparent marijuana, other bags, cigarette rolling paper, and rolled up brown paper commonly used to smoke nearly consumed marijuana cigarettes. Sgt. Fe'a also searched the briefcase and found a plastic bag containing apparent marijuana, live bullets for an unlicensable firearm, and 62 explosives known locally as "cherry bombs," and a long wallet containing an empty plastic bag. He turned over all of these items to the police evidence custodian.

On June 15, 2000, police Lt. Vaito'elau Laumoli performed forensic analysis by microscopic and chemical testing and determined the substances found in the waist pouch and briefcase to be marijuana. Lt. Laumoli is a specially trained drug analyst for the police department.

On April 4, 2000, in the District Court, Fuimaono pled guilty to the misdemeanor offense of reckless driving, A.S.C.A. § 22.0702, in lieu of the driving under the influence charge. The American Samoa Government ("the government") also dismissed the two vehicular licensing charges. The District Court had jurisdiction over these lesser charges. A.S.C.A. § 3.0302.

On April 28, 2000, the government commenced Fuimaono's prosecution on the present felony charge of unlawful possession of the controlled substance of marijuana, A.S.C.A. §§ 13.1022, 13.1006, and misdemeanor charge of possession of prohibited weapons, A.S.C.A. §§ 46.4202(a), 46.4220. After Fuimaono was bound over to the High Court, Fuimaono moved in the trial court to dismiss the information on the ground that the charges were barred by double jeopardy. The trial court denied the motion to dismiss, and Fuimaono then moved to suppress the

evidence obtained as a result of the vehicle stop and his arrest. The trial court also denied this motion, and the action proceeded to trial by jury.

## II. Double Jeopardy

■ Fuimaono argues that A.S.C.A. § 46.3107(4) barred his prosecution for both possession charges since he had already pled guilty to a crime which arose out of the same course of conduct.[1] The trial court rejected his argument. We review *de novo* whether Fuimaono's double jeopardy rights were violated. *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997).

■ Article I, Section 6 of the Revised Constitution of American Samoa provides in part that "[n]o person shall be subject for the same offense to be twice put in jeopardy of life or liberty." Similarly, the Fifth Amendment of the United States Constitution provides in part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." We acknowledge what has been implicit in our previous cases: American Samoa's double jeopardy clause affords the same protections as does the Federal Constitution. *See Am. Samoa Gov't v. Meleisea*, 24 A.S.R.2d 32, 35 (Trial Div. 1993); *Am. Samoa Gov't v. Schuster*, 24 A.S.R.2d 15, 16 (Trial Div. 1993); *Am. Samoa Gov't v. Fealofa`i*, 24 A.S.R.2d 10, 11 (Trial Div. 1993); *Am. Samoa Gov't v. A.famasaga*, 17 A.S.R.2d 145, 150 (Trial Div. 1990); *Am. Samoa Gov't v. Moafanua*, 4 A.S.R.2d 33, 34-35 (Trial Div. 1987). Both double jeopardy clauses thus protect the accused against "a second prosecution for the same offense after acquittal[;] . . . a second prosecution for the same offense after conviction[;] . . . [and] multiple punishments for the same offense." *Commonwealth v. Arriaga*, 691 N.E.2d 585, 587 (Mass. App. Ct. 1998) (emphasis removed) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

■ Determination of the "same offense" is the cornerstone of any double jeopardy analysis. The federal and territorial constitutions embrace "[t]he same-elements test, sometimes referred to as the '*Blockburger*' test, [which] inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Fealofa`i*, 24 A.S.R.2d at 11. However, other tests abound.

---

[1] The government does not dispute that "jeopardy normally attaches when the court unconditionally accepts a guilty plea." *United States v. Baggett*, 901 F.2d 1546, 1548 (11th Cir. 1990).

The short-lived "same conduct" test provides that, in addition to the *Blockburger* test, "Double Jeopardy bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady v. Corbin*, 495 U.S. 508, 521 (1990), *overruled by Dixon*, 509 U.S. at 704.

Additionally, the "same transaction" test "requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe v. Swenson*, 397 U.S. 436, 453-54 (1970) (Brennan, J., concurring). While some states have adopted these more stringent tests under their constitutions, they are not the federal standard and not necessarily the standard in American Samoa under Article I, Section 6.

Fuimaono maintains, however, that A.S.C.A. § 46.3107 shows a conscious decision by the Legislature of American Samoa to afford an accused more protection in American Samoa than the federal Constitution. A.S.C.A. § 46.3107 provides in part:

> When the same conduct of a person may establish the commission of more than 1 offense, he may be prosecuted for each offense. He may not, however, be convicted of more than 1 offense if:
>
>       \*    \*    \*    \*
>
> (4) the offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted unless the law provides that specific periods of that conduct constitute separate offenses.

The essence of Fuimaono's claim is that A.S.C.A. § 46.3107(4) encompasses the "same transaction" test. He urges that his second prosecution was barred because the offenses charged were committed during the "same course of conduct" previously prosecuted, which was "uninterrupted," and the law does not provide "that specific periods of that conduct constitute separate offenses." He concludes that the government could have avoided this problem by charging all the offenses in one prosecution in one tribunal.

The government counters that A.S.C.A. § 46.3107(4) pertains to the common law doctrine of "continuing offenses." Furthermore, it interprets Fuimaono's argument as applying the "same conduct" test and dismisses it as having been overruled in *Dixon*. While we disagree as to how the government classifies Fuimaono's argument, we agree with its interpretation of A.S.C.A. § 46.3107(4).

A.S.C.A. § 46.3107(4) is identical to Model Penal Code § 1.07(1)(e). The Comment to section 1.07 of the Model Penal Code explains:

> (e) *Continuing Course of Conduct.* Subsection (1)(e) deals with a continuing course of conduct prohibited by a single statute. It provides that only one conviction is proper based upon a single uninterrupted course of such behavior, unless the statute prescribes that specific periods constitute separate offenses. For example, a person violates an unlawful cohabitation statute only once, no matter how long his unlawful cohabiting continues, where the conduct was not interrupted by the issuance of process or otherwise.

Another good example of when A.S.C.A. § 46.3107(4) is implicated is in the context of sexual offenses. It is possible that a person could violate A.S.C.A. § 46.3611, Sodomy, more than once in a single transaction if he performs a sexual act with the victim on more than one of the defined offending body parts. *See* A.S.C.A. § 46.3601. In that case, we would rely on A.S.C.A. § 36.3107(4) to determine whether there was an uninterrupted, continuing course of conduct or whether two separate crimes had been committed. *See, e.g., Commonwealth v. Arriaga*, 691 N.E.2d at 590.

In interpreting Haw. Rev. Stat. § 701-109(1)(e) (1993), which is also identical to Model Penal Code § 1.07(1)(e), *State v. Caprio*, 937 P.2d 933 (Haw. Ct. App. 1997), observed:

> Unlike the double jeopardy clause, which protects a defendant from successive prosecutions after acquittal or conviction, for the "same offense," and from multiple punishments for the "same offense," HRS § 701-109 [and A.S.C.A. § 46.3107 are] a multiple offense limitation that protects a defendant from being convicted for certain combinations of offenses arising from the same conduct. 1 P. Robinson, *Criminal Law Defenses* § 68(a) at 328-29 (1984).
>
> \* \* \* \*
>
> The foregoing Commentary and Comments indicate that HRS § 701-109(l)(e) [and A.S.C.A. § 46.3107(4) were] intended to prohibit the State from dividing a crime, defined by statute as a continuing offense, into separate temporal or spatial units, and then charging a defendant with committing several counts of the same statutory offense, each count based on a separate temporal or spatial unit of the continuing offense.

937 P.2d at 944-45 (emphasis removed).

■ It is clear from this discussion that A.S.C.A. § 46.3107(4), contrary to Fuimaono's argument, does not speak to subsequent prosecutions.[2] Indeed, "the performance of a *Blockburger* analysis completes the judicial task in a successive prosecution case." *United States v. Morris*, 99 F.3d 476, 480 (1st Cir. 1996); *see also Arriaga*, 691 N.E.2d at 587-88 (explaining appropriate state and federal tests applicable when analyzing prohibition against multiple prosecutions and multiple punishments). Instead, A.S.C.A. § 46.3107(4) is applicable only when determining whether *one specific statute* allows for multiple convictions arising out of one transaction. In this respect, "[i]t is well settled that a single transaction can give rise to distinct offenses under *separate statutes* without violating the Double Jeopardy Clause." *Morris*, 99 F.3d at 480, (quoting *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981) (emphasis added)); *accord Missouri v. French*, 79 S.W.3d 896, 898-99 (Mo. 2002); *Caprio*, 937 P.2d at 944.

In applying the foregoing analysis to the case at bar, it is clear that Fuimaono's second prosecution was not barred by double jeopardy. We first apply the *Blockburger* test and determine that each offense charged in the successive prosecution, unlawful possession of a controlled substance and possession of a prohibited weapon, clearly contain elements not found in the offense of reckless driving. Both possession charges require the government to prove, for example, that Fuimaono possessed a prohibited contraband, irrespective of whether or not he was operating a motor vehicle. *See* A.S.C.A. §§ 13.1022, 46.4202, 22.0702. On the other hand, the charge of reckless driving requires the government to prove that Fuimaono was operating a motor vehicle, irrespective of whether or not he possessed a prohibited substance. *Id.* The *Blockburger* test is easily satisfied.

■ Furthermore, A.S.C.A. § 46.3107(4) is wholly inapplicable to this case. As discussed, that section speaks to multiple convictions arising out of the same statute. In this case, however, Fuimaono was charged under three separate statutes.[3]

### III. The *Terry* Stop

■ Fuimaono argues that the officers lacked a reasonable articulable suspicion to pull his bus over and, consequently, the evidence obtained

---

[2] We do not here decide what bearing, if any, A.S.C.A. § 46.3107(4) has upon multiple punishment cases, which is afforded different legal treatment.

[3] We note that none of the other provisions of A.S.C.A. § 46.3107 are applicable.

74

subsequent to the arrest should be suppressed as fruit of the poisonous tree.[4] We review the trial judge's findings of facts for clear error. *United States v. Michael R.*, 90 F.3d 340, 345 (9th Cir. 1996). On the other hand, we review *de novo* whether reasonable suspicion existed justifying the stop. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct a temporary investigative stop "if the stop is based upon reasonable suspicion . . . ." *United States v. Lopez-Gonzalez*, 916 F.2d 1011, 1013 (5th Cir. 1990). "The *Terry* rationale also permits the investigatory detention of a vehicle." *Id.* Reasonable suspicion is based on an objective standard that looks to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the stop]." *Terry*, 392 U.S. at 21.

The trial judge's findings in regards to the informant's tip were not clearly erroneous.[5] Because the informant's tip was reliable, it gave the police officers enough information to warrant a brief investigatory traffic stop. *Lopez-Gonzalez*, 916 F.2d at 1013. The officers had reasonable suspicion that Fuimaono, who was driving the bus, had recently been engaged in a criminal activity. *See* A.S.C.A. §§ 27.0532 (Prohibited Places of [Alcohol] Consumption), 46.4501 (Disturbing Public Peace). Because the stop was lawful, nothing found should be suppressed as fruit of a poisonous tree.

## IV. Sufficiency of the Evidence

Fuimaono argues that the evidence was insufficient to convict on the count of unlawful possession of a controlled substance because (1) the evidence obtained as a result of the traffic stop should have been suppressed and (2) the government never proved that Fuimaono possessed Cannabis Sativa L, better known as marijuana, but instead only proved he possessed a substance which contained Tetrahydrocannabinols ("THC"). We have already discussed why the evidence obtained from the traffic stop should not be suppressed. We now briefly address Fuimaono's second contention.

The thrust of Fuimaono's argument is that the government's expert, Lt.

---

[4] In the trial court, the defendant argued not only that the *Terry* Stop was invalid but also that the arrest, the search incident to arrest, and incriminating statements should all have been suppressed. He did not renew these additional arguments on appeal.

[5] The trial judge's findings were based on the testimony from the suppression hearing of Officers Samoa, Penitusi, and Poloai, and the former testimony of Officer Brown, who was unavailable to testify.

Laumoli, testified only that his analysis detected the presence of THC in the confiscated substances, and not that the substances themselves were marijuana. We have already held that "the claim that what was found was only [THC] and not marijuana is a distinction this court does not accept." *Faifaiese v. Am. Samoa Gov't*, 6 A.S.R.3d 10, 21 (App. Div. 2002). Even more importantly, Fuimaono overlooks the entirety of Lt. Laumoli's testimony.

██ Lt. Laumoli testified that there are three tests performed in the forensic analysis to identify marijuana. First, the analyst does a visual examination, separating the plants that are clearly not marijuana. Among other things, the analyst looks at the shape and number of leaves on the plant. Second, the analyst performs a microscopic test. This test involves a close examination of the "glandular hairs," found in the seeds of the plant, to see if their shape is consistent with the glandular hairs found in marijuana. Lastly, the analyst performs a chemical test to detect whether the substance contains THC, a chemical found in marijuana.

In this case, it appears that because the substances seized were not in plant form, the initial visual test was not performed. However, Lt. Laumoli testified that he performed both the microscopic and chemical tests. Therefore, Fuimaono's claim that the evidence proved, at best, the mere presence of THC fails. Lt. Laumoli's testimony showed that the chemical test, when conducted in conjunction with the microscopic test, proved that the substance was marijuana. Given the evidence presented in this case, a rational trier of fact could have found Fuimaono guilty beyond a reasonable doubt. *Id.* at 18 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## V. Conclusion

For the reasons stated above, Fuimaono's conviction is affirmed.

It is so ordered.