GRIFFIN, J.
Charles Prestley [“Prestley”] appeals the denial of his motion to suppress. Prestley was a passenger in a stolen vehicle. The vehicle was stopped, and all occupants were placed in handcuffs and searched. During the search, police officers found a revolver in Prestley’s pocket, and he was arrested for carrying a concealed weapon. A pat-down search conducted incident to his arrest revealed a cigar tube containing eight-and-one-half grams of crack cocaine. Thereafter, he was charged by information with possession of a firearm by a convicted felon, carrying a concealed firearm, possession of a firearm in the commission of a felony, and possession of cocaine.
At the suppression hearing, two Orlando police officers involved in the stop testified that, on March 24, 2001, they ran the license plate of a car they were following and received confirmation that the vehicle was stolen. About this time, the car pulled into a driveway, and the officers pulled in behind it and conducted a felony traffic stop. This meant that they pulled the occupants out of the vehicle at gun-pointone at a time. Prestley sat quietly in *864 the back of the stolen vehicle and made no furtive movements. He stepped out of the vehicle and was made to back toward the officers, raise his shirt and turn around slowly so the officers could check his waistband for weapons. After this, he was placed in handcuffs and moved to the rear of the vehicle. Officer Eason testified that it is department policy to conduct a pat down for weapons of all persons removed from a vehicle after a felony traffic stop. Officer Gilmer testified that searches are conducted following a felony traffic stop for officer safety reasons. Officer Eason saw Officer Williams, who had arrived on the scene as back-up, conduct the pat down. He felt a bulge in Prestley’s left front pants pocket and withdrew a .38 caliber revolver. At that point, Prestley was placed under arrest for carrying a concealed firearm. During the search incident to arrest, Officer Williams found a cigar tube containing eight-and-one-half grams of crack cocaine. Prestley was read his Miranda rights. After this, Prestley told the officers that he was delivering the cocaine to the house where the stop was made.
Although Prestley contradicted the officers’ testimony in all material respects, the trial court accepted as true the officers’ version of events. The trial court correctly found that Prestley’s initial detention was valid. The police were entitled to stop the vehicle in which he was riding to investigate the theft of the automobile, which had been reported stolen. The officers were also entitled to detain the passengers, including Prestley, to investigate their participation, if any, in the theft and to determine whether they were guilty of trespass of a conveyance. As explained by the court in People v. H.J., 931 P.2d 1177 (Colo.1997):
Officers may reasonably suspect that a passenger in a vehicle suspected of being stolen participated in the crime of stealing that vehicle. See United States v. Torres-Sanchez, 83 F.3d 1123, 1127 (9th Cir.1996) (following a traffic stop, officer reasonably believed vehicle was stolen and therefore could properly question occupants of vehicle).
Occupants of a car differ from, for example, customers in a store or passengers on a public bus. Occupants of a private vehicle are traveling together by choice and thus may be assumed to have some personal or business association with one another. Knowledge or suspicion that one of the occupants has been involved in criminal activity occurring within the car, or involving the car itself, serves as a basis for a reasonable suspicion that the other occupants may be participants in that activity. See State v. Taylor, 62 Or.App. 586, 661 P.2d 569 (1983). Therefore, we conclude that since the officers had a reasonable suspicion that the car was stolen, they had a basis for stopping and questioning the passengers in the vehicle, including the Juvenile.
Id. at 1182.[1]
The fact that officers ordered Prestley out of the vehicle did not transform the investigatory stop into an arrest. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). The officers were also entitled to place Prestley in handcuffs to the extent reasonably necessary for officer safety, without converting the investigatory stop into an arrest. *865 See Reynolds v. State, 592 So.2d 1082, 1084 (Fla.1992). Such methods used during an investigatory detention must be reasonable in light of the circumstances. We have no basis to gainsay the trial court’s conclusion that they were reasonable.
AFFIRMED.
PETERSON and MONACO, JJ., concur.

. An investigatory detention, or Terry stop, is permissible if a police officer has a well-founded suspicion that the individual detained has committed, is committing, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Reynolds v. State, 592 So.2d 1082 (Fla.1992); see also § 901.151, Fla. Stat. (2003).