991 So.2d 390 (2008)
The STATE of Florida, Appellant,
v.
Raul HERRERA, Appellee.
No. 3D07-1561.
District Court of Appeal of Florida, Third District.
September 3, 2008.
*391 Bill McCollum, Attorney General, and Michael C. Greenberg, Assistant Attorney General, for appellant.
Adelstein & Matters and Stuart Adelstein, Miami; Philip R. Horowitz, for appellee.
Before SHEPHERD, CORTIÑAS, and SALTER, JJ.
SHEPHERD, J.
The State of Florida appeals a trial court order suppressing some seventy pounds of marijuana seized by police from a motor vehicle in the possession of the defendant, Raul Herrera, on the ground that the seizure was incident to an illegal arrest. The State argues that the arrest was legal because the defendant knowingly fled police while they were engaged in the performance of a lawful investigatory stop based upon a founded suspicion that Herrera was engaged in trafficking. We find the State's argument persuasive, and reverse the order suppressing the seized contraband.
On June 20, 2001, Herrera was arrested by Miami-Dade County police in the parking lot of a Home Depot at a local shopping center. The arrest was the culmination of a day's work by a confidential informant and police, during which the informant had fingered Raul Duarte as a local drug dealer. The informant and Duarte agreed to consummate a deal at the location. Duarte told the informant the drugs would be in a Toyota 4Runner, and that he would be following in his personal vehicle. As it turned out, Herrera was the driver of the 4Runner. Police stopped Duarte as the two vehicles approached the Home Depot. There was no contraband in Duarte's car. Before police could stop the 4Runner, Herrera parked his vehicle and went into the store.
Several hours later, Herrera emerged from the store. Again before police could stop Herrera, he entered the car and began driving away. When police activated their emergency lights to signal him to stop, Herrera tried to outrun the authorities, running over two curbs and crossing a mall entryway before he finally was detained. The officers handcuffed him and held him until a narcotics detection dog arrived. After the dog alerted to a small quantity of marijuana in the front console and a much larger quantity in two black duffel bags in the backseat, Herrera was charged with trafficking in marijuana.
In response to the defendant's assertion that his arrest was illegal, the State argues the police had a founded suspicion the defendant was engaging in illegal activity at the time the police vehicle activated its *392 emergency lights, and by fleeing, the defendant committed the crime of resisting an officer without violence, a violation of section 843.02, Florida Statutes (2007),[1] giving police probable cause to arrest the defendant. The cascading of these events, says the State, gave the police the right to search the vehicle.
Examining this series of events in the order argued by the State, the first and most critical question is whether the police had a reasonable articulable suspicion that illegal activity was afoot at the time they sought to stop Herrera. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); E.W. v. State, 873 So.2d 485, 488 (Fla. 1st DCA 2004). In making this determination, "we look at the cumulative impact of the circumstances perceived by the officers." Kehoe v. State, 521 So.2d 1094, 1096 (Fla.1988), rev'd on other grounds, Dobrin v. Fla. Dep't of Highway Safety & Motor Vehicles, 874 So.2d 1171 (Fla.2004); see also State v. Gil, 780 So.2d 297 (Fla. 3d DCA 2001). The day's events justified the stop. On the morning of the stop, the confidential informant, who previously had provided "good information" to authorities, advised Miami-Dade police that he knew a subject by the name of Raul Duarte, who had come by a large quantity of marijuana that he wanted to sell. Police responded to Duarte's residence and began to surveil him. Shortly thereafter, Duarte called the confidential informant and asked to meet him at a nearby gas station. After the call, officers saw Duarte leave his residence and tailed him to a nearby strip mall, where he retrieved a large shopping bag and placed it in his car. As Duarte was returning from the strip mall, officers conducted a traffic stop and search of Duarte's person and vehicle. The search revealed no contraband and Duarte was released.[2] Because police knew Duarte had no contraband, they ordered the confidential informant to cancel the meeting. Duarte then went to another residence, apparently unaware he was still being tailed by police.
At this residence, police observed Duarte in the front yard, speaking with the confidential informant. Herrera was standing there with him. Duarte told the informant he had the narcotics and requested that the confidential informant meet him there. Police ordered the informant to change the location of the deal to a nearby shopping center. Duarte agreed and told the informant that two cars would proceed to the mall, and that the drugs would be in a gray Toyota 4Runner with Duarte following in a separate vehicle. There was not a scintilla of difference between what the informant said would happen and what did happen. Both vehicles proceeded from this residence to the mall where the takedown occurred. Viewing the circumstances as known to the police at the time they commenced the execution of the stop in this case, we find inescapable the conclusion that the police had a founded suspicion to conduct an investigatory stop of the 4Runner. See, e.g., Gil, 780 So.2d at 299 (holding sufficient indicia of reliability existed to justify stop where untested confidential informant provided "a general description of the defendant, his house, and his car[,]" and detailed information *393 verified by police on the scene about the defendant's schedule); State v. Miranda, 701 So.2d 424, 426-27 (Fla. 3d DCA 1997) (holding where "an informant known to the detective stated that a specifically described individual would arrive at a specific restaurant at a specific time, and would be carrying an amount of cocaine in his person" and "[t]he time, place, and description matched the information given... there was a reasonable suspicion to justify an investigative stop"); see also Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (holding an anonymous tip may be sufficiently corroborated by the observations of officers in the field to serve as a basis for an investigatory stop); United States v. Hill, 91 F.3d 1064, 1069 (8th Cir.1996) (quoting Illinois v. Gates, 462 U.S. 213, 244-45, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (holding confidential informant's tips sufficiently reliable to perform an investigatory stop after the police "independently corroborated much of the informant's tips, which `reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting' the tips").
It appears from the hearing transcript that the trial court did not consider these circumstances, but instead granted the motion on the ground that Herrera was arrested before the existence of narcotics was confirmed. This focus was legally incorrect. Although the police decided to conduct a dog sniff before seizing the drugs, the dog sniff was legally irrelevant to both the arrest of the defendant and the seizure of the drugs. The defendant was subject to arrest at the moment he began to flee. See § 843.02; Valdes v. State, 959 So.2d 300, 302 (Fla. 3d DCA 2007) (holding a charge of resisting without violence could arise where a defendant resisted an officer's attempts to perform an investigatory stop); E.W., 873 So.2d at 488 (holding that to support a charge of resisting arrest without violence, "[i]t is not necessary that the underlying criminal activity providing the basis for the arrest result in a charge or conviction; it is only necessary that the officer has a founded suspicion of criminal activity to make the detention");[3]see also Terry, 392 U.S. at 26, 88 S.Ct. 1868. Upon his lawful arrest, the police had authority to search the vehicle. See Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); accord State v. Clark, 986 So.2d 625 (Fla. 2d DCA 2008).
Reversed.
NOTES
[1] The statute states in relevant part:

"Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9) ... in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree...."
§ 843.02.
[2] Apparently, Duarte was just running an errand with his brother, whom he picked up on the way to the strip mall.
[3] Herrera may also have been subject to arrest under section 316.1935(1), Florida Statutes (2007). Because this ground was not argued below, we do not consider it here. See Tillman v. State, 471 So.2d 32 (Fla. 1985).