34 So.3d 76 (2010)
The STATE of Florida, Appellant,
v.
Yoander ZALDIVAR, Appellee.
No. 3D07-2933.
District Court of Appeal of Florida, Third District.
March 31, 2010.
Rehearing and Rehearing En Banc Denied May 18, 2010.
*77 Bill McCollum, Attorney General, and Jill D. Kramer, Assistant Attorney General, for appellant.
Grey and Mourin, and Juan E. Mourin, Miami, for appellee.
Before SHEPHERD, CORTIÑAS, and SALTER, JJ.
SALTER, J.
The State appeals a circuit court order suppressing certain physical evidence and statements made by the defendant to law enforcement officers regarding a burglary. We reverse.

I. The Burglary

As noted by the trial court in the suppression order, the pertinent facts are not in dispute. On April 4, 2006, burglars removed some $300 in cash and two firearms from a business in Hialeah. The next day, a surveillance video identified a former employee using a key to open the door of the business after it had closed. This allowed hooded or masked burglars to enter, burglarize the business, and exit.
The business owner recognized the former employee, and a detective immediately interviewed her. She admitted her involvement and agreed to identify the persons she claimed were the burglars. She provided the full name of one such person, Armin Dominguez, and the first name, Yoander, of another. She identified Dominguez when a detective showed her his driver's license photo, and she provided Dominguez's address and vehicle description as well. Law enforcement officers promptly set up surveillance at the address provided by the former employee.
In about an hour, a vehicle matching the description given by the former employee, and occupied by two males, drove up to Dominguez's residence. One of the detectives identified Dominguez as the driver.

II. The Vehicle Stop

As the car came up to Dominguez's residence and was about to enter the driveway, the occupants spotted one of the unmarked cars and quickly sped away. The surveillance team called additional police units and the vehicle was blocked in a "felony stop" maneuver.[1] Both occupants were directed to exit the car, at which point the police saw, through the clear windows of the vehicle, a shotgun on the back seat and a ski mask and cash box on the floor of the vehicle. Another handgun was also found.
The lead detective immediately identified himself as an investigator and read Dominguez his rights in Spanish per a Miranda[2] card. Dominguez acknowledged *78 that he knew that the police were there because of "the burglary last night."
The passenger in the vehicle identified himself as "Yoander," the first name that had been provided by the former employee. He was in fact Yoander Zaldivar, the defendant below and appellee here. Upon learning that first name, the detective administered a verbal Miranda warning to Zaldivar as well.
Zaldivar was then transported to the police station and provided a written Miranda form in Spanish, which he signed. Thereafter, he provided a comprehensive oral and written statement admitting his involvement (with Dominguez) as one of the burglars.

III. Analysis: Reasonable Suspicion and Motor Vehicle Passengers

The trial court found that this sequence of facts did not provide a reasonable suspicion to detain and question Zaldivar. At the very moment Dominguez and the vehicle were stopped, the officers did not know the passenger's name and had no photographic identification to link the passenger to the burglary.
The Supreme Court of the United States considered the liberty interests of passengers in a lawfully-stopped car[3] in Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997):
[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.
See also State v. Hernandez, 718 So.2d 833, 836 (Fla. 3d DCA 1998).
Another District Court in Florida has held, as we do in this case, that a passenger in a car with an occupant reasonably suspected of criminal activity occurring within, or involving, the car[4] may be questioned:
Occupants of a private vehicle are traveling together by choice and thus may be assumed to have some personal or business association with one another. Knowledge or suspicion that one of the occupants has been involved in criminal activity occurring within the car, or involving the car itself, serves as a basis for a reasonable suspicion that the other occupants may be participants in that activity.
Prestley v. State, 896 So.2d 862, 864 (Fla. 5th DCA 2005) (citation omitted).
Immediately after Dominguez's car was stopped, the officers observed the stolen property (including a shotgun) in plain view in the back seat, and they learned that the passenger's first name was "Yoander." At that point, they had a founded suspicion as to Zaldivar as well.
The trial court cited, and Zaldivar relies upon, four cases defining an "arrest." *79 The court concluded that Zaldivar's detention with Dominguez was an arrest without probable cause. As Wilson and Prestley (among others) make clear, however, the fact that an occupant is ordered out of a lawfully-stopped car, a permissible investigatory detention, does not transform that detention into an arrest. Here, the information obtained during and immediately after that detention then provided probable cause for Zaldivar's arrest. See § 901.151, Fla. Stat. (2006).

IV. Conclusion

Had Zaldivar been the driver and only occupant of the vehicle when it was stopped by the police, the suppression order might stand. But in this case, the police had ample cause to stop Dominguez and the car he was driving. Such a stop includes the legal right to order other occupants to step out of the vehicle.
Once the police observed the stolen weapon, saw other evidence of the burglary in plain view in the car, and learned that the passenger's first name was "Yoander," they had probable cause to arrest Zaldivar, provide a Miranda warning, and question him. His motion to suppress the evidence of the burglary and his post-arrest statements should have been denied.
Reversed.
SHEPHERD, J., concurring.
I concur in the decision of the majority in this case. I write only to clarify the reasons for my concurrence.
This case arises out of the burglary of a video store, located in Hialeah, Florida, on April 4, 2006. The next morning, Detective Francisco Verdera was assigned to investigate the crime. Verdera was the sole witness at the suppression hearing.
Verdera testified that upon assignment, he and his partner responded to the crime location to speak with the owner. They also viewed a security video of the crime. The video showed three burglars were given entry to the business premises by a former employee, identified by the business owner as Maria Lorelys. Lorelys surreptitiously had obtained the keys to the business from a current manager after she was fired.
The detectives proceeded to Lorelys' home. Upon being told she had been taped facilitating the burglary, Lorelys confessed her misdeeds and identified two of her three accomplices, Armin Dominguez and an individual she knew only by first name, Yoander. She was unable to name the third accomplice. She knew where Armin lived, having gone with him to his house after the burglary, and she agreed to take the detectives to the location. She also told them Armin drove a blue X-type Jaguar. Finally, she provided the detectives positive identification of Armin through a driver's license photo obtained by the detectives.
After Lorelys identified Armin's house, the detectives established surveillance at the location. The record does not indicate whether Lorelys remained at the scene; however, two back-up units and a total of at least six officers and detectives set up around the house. About an hour later, Armin arrived, driving the Jaguar. An unidentified male was in the passenger seat. After pulling into the driveway, Armin quickly backed out and sped off. Detective Verdera testified he believed Armin had detected the presence of a nearby sergeant's vehicle "[who] hadn't taken up a very good position." Upon Verdera advising all units that Armin was in the fleeing Jaguar, the assembled officers and detectives gave chase, stopped and blocked the Jaguar a short distance away.
*80 Verdera further testified that after the Jaguar was stopped, Armin and the unidentified passenger were "ordered out of the car at gunpoint" and "secured." After both suspects were secured, without the use of handcuffs, the officers visually inspected the vehicle and immediately observed the weapon and other remnants of the burglary in the back, in plain view.[5] The passenger then was patted down, and asked to identify himself. He identified himself as Yoander, the same name Lorelys gave when identifying the second of the three men who co-perpetrated the burglary.
"Probable cause" is defined as "a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in the belief that the named suspect is guilty of the offense charged." Johnson v. State, 660 So.2d 648, 654 (Fla.1995)(citing Dunnavant v. State, 46 So.2d 871 (Fla.1950)). As the name implies, its application depends on probabilities deduced from "the legal, factual and practical considerations of everyday life, taken in context, on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It exists where "facts and circumstances within [an arresting officer's] knowledge of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" a crime has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); see generally Phillip A. Hubbart, Making Sense of Search and Seizure Law: A Fourth Amendment Handbook, 187 (2005).
In our case, there is no question a sufficiently individualized showing of wrongdoing by Armin at the time he was ordered out of his vehicle for arrest existed. Although the authorities did not know the identity of the passenger in the vehicle or why he was in the car with Armin, the fact that Armin sought to elude the authorities by flight provided sufficient justification for the police to order both the driver and the passenger out of the car at gunpoint. See D.N. v. State, 805 So.2d 63, 65 (Fla. 3d DCA 2002) (citing Maryland v. Wilson, 519 U.S. 408, 412-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)). His further detention was justified upon discovery of the contraband. See State v. Hunter, 615 So.2d 727, 734 (Fla. 5th DCA 1993) (concluding law enforcement's observation of contraband, following the initial stop of the suspect, supported a finding of reasonable suspicion to continue the detention, and ultimately, probable cause to arrest). Zaldivar's confirmation of his identity was the last piece needed to complete the probable cause puzzle.
NOTES
[1] Such a stop assumes that one or more of the occupants are armed and dangerous. Unlike a routine traffic stop, the police have their service weapons at the ready until they can confirm that the occupants pose no threat. The lead detective on this case testified that a felony stop was conducted in this instance "because there were firearms involved in the burglary."
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] In this case, the law enforcement officers had a founded suspicion sufficient to stop Dominguez based on the statement given by the former employee, the visual identification of Dominguez as the driver (made possible because the lead investigator had obtained a copy of Dominguez's driver's license photo), the appearance of the specifically-described car at Dominguez's residence as related by the former employee, and the attempt by Dominguez to flee once he spotted the police. See State v. Herrera, 991 So.2d 390, 392 (Fla. 3d DCA 2008).
[4] The possession of stolen goods in the vehicle was established immediately after Dominguez was stopped.
[5] The exact testimony on this point, given by Detective Verdera on direct examination, is as follows:

Q. Now, what happened upon your stopping the vehicle?
A. Did a felony stop, made them exit the vehicle. Once they were secure, we did like a visual inspection because there were firearms involved in the burglary.
In the back seat in plain view, clear windows, we had the shotgun. We had a ski mask on the floor of the vehicle, and we had the box they had taken. It was a box with I think between $200, $300 that they had taken from the business the night before. It was there on the floor, also.