SALTER, J.
The State appeals a circuit court order suppressing certain physical evidence and statements made by the defendant to law enforcement officers regarding a burglary. We reverse.
I. The Burglary
As noted by the trial court in the suppression order, the pertinent facts are not in dispute. On April 4, 2006, burglars removed some $300 in cash and two fee-arms from a business in Hialeah. The next day, a surveillance video identified a former employee using a key to open the door of the business after it had closed. This allowed hooded or masked burglars to enter, burglarize the business, and exit.
The business owner recognized the former employee, and a detective immediately interviewed her. She admitted her involvement and agreed to identify the persons she claimed were the burglars. She provided the full name of one such person, Armin Dominguez, and the first name, Yoander, of another. She identified Dominguez when a detective showed her his driver’s license photo, and she provided Dominguez’s address and vehicle description as well. Law enforcement officers promptly set up' surveillance at the address provided by the former employee.
In about an hour, a vehicle matching the description given by the former employee, and occupied by two males, drove up to Dominguez’s residence. One of the detectives identified Dominguez as the driver.
II. The Vehicle Stop
As the car came up to Dominguez’s residence and was about to enter the driveway, the occupants spotted one of the unmarked cars and quickly sped away. The surveillance team called additional police units and the vehicle was blocked in a “felony stop” maneuver.[1] Both occupants were directed to exit the car, at which point the police saw, through the clear windows of the vehicle, a shotgun on the back seat and a ski mask and cash box on the floor of the vehicle. Another handgun was also found.
The lead detective immediately identified himself as an investigator and read Dominguez his rights in Spanish per a Miranda[2] card. Dominguez acknowledged *78 that he knew that the police were there because of “the burglary last night.”
The passenger in the vehicle identified himself as “Yoander,” the first name that had been provided by the former employee. He was in fact Yoander Zaldivar, the defendant below and appellee here. Upon learning that first name, the detective administered a verbal Miranda warning to Zaldivar as well.
Zaldivar was then transported to the police station and provided a written Miranda form in Spanish, which he signed. Thereafter, he provided a comprehensive oral and written statement admitting his involvement (with Dominguez) as one of the burglars.
III. Analysis: Reasonable Suspicion and Motor Vehicle Passengers
The trial court found that this sequence of facts did not provide a reasonable suspicion to detain and question Zaldivar. At the very moment Dominguez and the vehicle were stopped, the officers did not know the passenger’s name and had no photographic identification to link the passenger to the burglary.
The Supreme Court of the United States considered the liberty interests of passengers in a lawfully-stopped car[3] in Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997):
[Djanger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.
See also State v. Hernandez, 718 So.2d 833, 836 (Fla. 3d DCA 1998).
Another District Court in Florida has held, as we do in this case, that a passenger in a car with an occupant reasonably suspected of criminal activity occurring within, or involving, the car[4] may be questioned:
Occupants of a private vehicle are traveling together by choice and thus may be assumed to have some personal or business association with one another. Knowledge or suspicion that one of the occupants has been involved in criminal activity occurring within the car, or involving the car itself, serves as a basis for a reasonable suspicion that the other occupants may be participants in that activity.
Prestley v. State, 896 So.2d 862, 864 (Fla. 5th DCA 2005) (citation omitted).
Immediately after Dominguez’s car was stopped, the officers observed the stolen property (including a shotgun) in plain view in the back seat, and they learned that the passenger’s first name was ‘Yoan-der.” At that point, they had a founded suspicion as to Zaldivar as well.
The trial court cited, and Zaldivar relies upon, four cases defining an “ar *79 rest.” The court concluded that Zaldivar’s detention with Dominguez was an arrest without probable cause. As Wilson and Prestley (among others) make clear, however, the fact that an occupant is ordered out of a lawfully-stopped car, a permissible investigatory detention, does not transform that detention into an arrest. Here, the information obtained during and immediately after that detention then provided probable cause for Zaldivar’s arrest. See § 901.151, Fla. Stat. (2006).
IV. Conclusion
Had Zaldivar been the driver and only occupant of the vehicle when it was stopped by the police, the suppression order might stand. But in this case, the police had ample cause to stop Dominguez and the car he was driving. Such a stop includes the legal right to order other occupants to step out of the vehicle.
Once the police observed the stolen weapon, saw other evidence of the burglary in plain view in the car, and learned that the passenger’s first name was “Yoan-der,” they had probable cause to arrest Zaldivar, provide a Miranda warning, and question him. His motion to suppress the evidence of the burglary and his post-arrest statements should have been denied.
Reversed.

. Such a stop assumes that one or more of the occupants are armed and dangerous. Unlike a routine traffic stop, the police have their service weapons at the ready until they can confirm that the occupants pose no threat. The lead detective on this case testified that a felony stop was conducted in this instance "because there were firearms involved in the burglary."

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. In this case, the law enforcement officers had a founded suspicion sufficient to stop Dominguez based on the statement given by the former employee, the visual identification of Dominguez as the driver (made possible because the lead investigator had obtained a copy of Dominguez's driver’s license photo), the appearance of the specifically-described car at Dominguez's residence as related by the former employee, and the attempt by Dominguez to flee once he spotted the police. See State v. Herrera, 991 So.2d 390, 392 (Fla. 3d DCA 2008).

. The possession of stolen goods in the vehicle was established immediately after Dominguez was stopped.