DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**G.M.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-969

[August 12, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Elijah H. Williams, Judge; L.T. Case No. 13001111 DL00A.

Carey Haughwout, Public Defender, and Zainabu Rumala, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Angela E. Noble, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

G.M. ("appellant") appeals the final order of the trial court finding him guilty of possession of marijuana. Appellant claims the trial court erred by denying the motion to suppress the marijuana recovered from his pocket that resulted in his arrest. Under the facts of this case, we agree with appellant that his motion to suppress should have been granted.

"'[T]he standard of review applicable to a motion to suppress evidence requires that this Court defer to the trial court's factual findings but review legal conclusions de novo.'" *State v. Christmas*, 133 So. 3d 1093, 1096 (Fla. 4th DCA 2014) (alteration in original) (quoting *State v. Abbey*, 28 So. 3d 208, 210 (Fla. 4th DCA 2010)).

The evidence at trial showed that on the day of appellant's arrest, law enforcement received a call regarding a stolen vehicle. When that vehicle ultimately was located in a parking lot, appellant was seated in the passenger seat. Officers approached the vehicle, and both appellant and

the driver were ordered out of the car. Because he was in a stolen vehicle, the officers handcuffed appellant and performed a weapons pat-down for officer safety before placing him in the back of a patrol car. The officer who performed the pat-down was called as a witness to testify about what happened after appellant got out of the car:

Q: And how did you conduct that patdown?

A: So, basically, we -- we pat down for areas of -- I mean, we pat down the whole body just for weapons, so, starting from the top all the way down to their ankles basically. Once I got to his pocket area, I could feel that there was a baggie inside of his pocket. And inside of the baggie or in the area of that baggie, I could feel that there was like a plant-like material inside of it.

Q: Okay. So, you just felt it and it was immediately apparent that there was a plant?

A: Correct.

Q: Okay. And you believed it to be a plant right away?

A: Correct.

Q: And what -- what kind of plant?

A: Oh. I had no clue what type of plant at the time.

Q: Okay. At any time did you squeeze that plastic baggie?

A: No.

Q: Did you manipulate it in any way?

A: Not that I recall.

Q: Okay. What happened after you had felt the plant in the plastic baggie?

A: Just based on my training and experience, thinking that it was marijuana, I -- I pulled it out of the pocket.

On cross-examination, the officer provided more detail about the circumstances surrounding the pat-down:

Q:  Okay.  And, then, did you notice any bulges in his clothes?

A:  No.

Q:  Okay.  Did he say anything that would be alarming to you that you think he's dangerous?

A:  No.

Q:  Anything that -- Did -- Did the child say anything, and the child being [G.M.] – say anything to you that you thought he was armed?

A:  No.

Q:  Okay. Now, he's -- You saw him in the car and he's just sitting there in the passenger's seat –

A:  Um-hum (affirmative).

Q:  -- and you asked him to get out.  Now, he gets out and he's clothed?

A:  Yes, he had clothes on.

Q:  And he gets out.  Now, at this point you say you saw no bulges in his clothes?

A:  Um-hum (affirmative).

Q:  Okay.

A:  Correct.

Q:  And, basically, we just had a -- a skinny teenager?

A:  Okay.

Q:  Would that be fair to say?

A: With clothes on, sure.

Q: Yes, with clothes on of course. And now, you mentioned that you patted him down for weapons?

A: Absolutely.

Q: Okay. But at this point you didn't see any weapons on him?

A: Correct.

Q: There was no threatening behavior from the child -- this child?

A: Sure.

Q: Okay. And there was -- there was no threat made to law enforcement?

A: No. However, once we -- Being that it was a stolen vehicle, he had to be handcuffed and placed in my -- in the back seat of my patrol car for further investigation.

Q: And is it BSO policy to do a patdown for weapons prior to placing someone –

A: Yeah, we have to –

Q: -- in handcuffs?

A: -- make sure that the -- Because the back of our patrol car is a secure – it's a secured facility. It's basically like a jail.

Q: Yes.

A: So, if -- if you bring any type of contraband to the back of my police car –

Q: You could be charged?

A: Correct.

Q: Okay. But there was nothing on [G.M.] that day that made you think he's armed?

A: No, just the fact that he was sitting -- sitting in a stolen vehicle.

Q: In the car?

A: Yeah.

Counsel for appellant argued that the evidence recovered during the pat-down search should have been suppressed because: 1) there was nothing to suggest that appellant was armed and dangerous; 2) appellant did not display any evasive or threatening behavior, did not make incriminating statements, and did not attempt to flee; and 3) there was no bulge in appellant's clothing indicating the presence of a weapon.

Case law consistently holds that an officer must have a reasonable belief that their safety is in danger, and, if so, must limit their contact to performing only a pat-down search. *See Ybarra v. Illinois*, 444 U.S. 85, 93 (1979) ("[A] law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."); *see also United States v. McCargo*, 464 F.3d 192, 202 (2d Cir. 2006) (stating that while "police are [not] entitled to pat down a person, absent reasonable suspicion that he is armed, simply because they have stopped that person pursuant to a lawful *Terry* stop . . . in cases where the police may lawfully transport a suspect to the scene of the crime in the rear of a police car, the police may carry out a departmental policy, imposed for reasons of officer safety, by patting down that person"); *A.J.M. v. State*, 746 So. 2d 1222, 1224 (Fla. 3d DCA 1999) (upholding the denial of defendant's motion to suppress evidence because officer that performed pat-down search "clearly articulated the specific matter that caused him to become concerned for his, and his partner's, safety"); *Harvey v. State*, 703 So. 2d 1113, 1114 (Fla. 1st DCA 1997) (quoting Florida's Stop and Frisk law for the proposition that authorized law enforcement personnel must have probable cause "to believe that any person whom [they have] temporarily detained, or [are] about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person" prior to searching them for the presence of a weapon) (quoting § 901.151 Fla. Stat. (1995)).

In *Terry v. Ohio*, 392 U.S. 1, 21 (1968), the Supreme Court stated, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

The Court went on to say that, in making the assessment of the reasonableness of a particular search in light of the particular circumstances:

> [I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the . . . search warrant a man of reasonable caution in the belief that the action taken was appropriate? *Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction.*

*Id.* at 21-22 (emphasis added) (citations omitted) (internal quotation marks omitted).

The Court also has stated that, once a vehicle has been lawfully stopped, due to the inherent danger of a traffic stop involving multiple passengers, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). The circumstances of the stop also can provide a reasonable basis for a heightened sense of alarm above what might be associated with a non-criminal traffic violation. For example, we recognize that a stop involving a stolen vehicle can be inherently more dangerous than stops involving more routine traffic infractions. In the instant case, we agree with the reasoning of the Ninth Circuit in that we have no problem with the officers performing a pat-down on appellant once he was asked to exit the vehicle:

> We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make a nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity,

capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed.

*United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971).

Moreover, in the instant case there could be individualized suspicion directed towards appellant that might merit an investigation. Indeed, a passenger in a stolen vehicle can be as guilty of possession of a stolen motor vehicle as the driver "where the circumstantial evidence shows that a reasonable person would have believed that the vehicle was stolen." *People v. Tucker*, 542 N.E.2d 804, 812 (Ill. Apt. Ct. 1989).

In *Prestley v. State*, 896 So. 2d 862, 863 (Fla. 5th DCA 2005), the defendant was a passenger in a stolen car that was pulled over by police. During the hearing on the defendant's motion to suppress evidence, two police officers testified that they pulled the vehicle over after confirming it was stolen, at which time they conducted a felony traffic stop, whereby the officers "pulled the occupants out of the vehicle at gunpoint one at a time." *Id.* After the defendant was removed from the car, he was placed in handcuffs and subjected to a pat-down search. *Id.* at 864. According to one of the officers, pat-down searches were conducted during felony traffic stops per department policy, "for officer safety reasons." *Id.*

The Fifth District noted that "police were entitled to stop the vehicle in which [the defendant] was riding to investigate the theft of the automobile, which had been reported stolen. The officers were also entitled to detain the passengers, including Prestley, to investigate their participation, if any, in the theft . . . ." *Id.* Ultimately, the court held:

> The fact that officers ordered Prestley out of the vehicle did not transform the investigatory stop into an arrest. The officers were also entitled to place Prestley in handcuffs to the extent reasonably necessary for officer safety, without converting the investigatory stop into an arrest. Such methods used during an investigatory detention must be reasonable in light of the circumstances. We have no basis to gainsay the trial court's conclusion that they were reasonable.

*Id.* at 864-65 (citations omitted).

Similarly, in the instant case appellant was removed from the stolen car, placed in handcuffs during the course of the investigation, and seated in the back of the police vehicle. At this point, although he was not under arrest, the police did have reason to investigate appellant's involvement in a potential criminal activity, and it was proper to initially place him in handcuffs in a patrol car while doing so. *See Reynolds v. State*, 592 So. 2d 1082, 1085 (Fla. 1992) ("[P]olice may properly handcuff a person whom they are temporarily detaining when circumstances reasonably justify the use of such restraint."). Under such circumstances, a limited pat-down for weapons was not unreasonable.

Under Florida law, "a protective frisk or 'pat-down' must be limited to that which is necessary for the discovery of weapons. It may not extend beyond a pat-down of the suspect's outer clothing unless the pat-down or other circumstances lead the officer to believe that the suspect has a weapon." *Jamison v. State*, 455 So. 2d 1112, 1114 (Fla. 4th DCA 1984); *see also Doctor v. State*, 596 So. 2d 442, 444-45 (Fla. 1992) (stating that "during the course of a legitimate frisk for weapons, police may only seize weapons or objects which reasonably could be weapons, despite the fact that the officer may reasonably suspect that the object may be evidence of a crime").

In *Minnesota v. Dickerson*, the Supreme Court held that:

> If a police officer *lawfully* pats down a suspect's outer clothing and feels an object whose contour or mass *makes its identity immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

508 U.S. 366, 376-77 (1993) (emphasis added) (footnote omitted).

Additionally, under the "plain feel doctrine," a police officer may retrieve an item felt during a pat-down search if the officer has probable cause to believe that the item is actually contraband. *See Campuzano v. State*, 771 So. 2d 1238, 1244-45 (Fla. 4th DCA 2000) (upholding the denial of defendant's motion to suppress cocaine recovered during pat-down search for weapons where, before conducting the pat-down search, police officer received an anonymous tip that defendant would be in possession of cocaine at that time, thus establishing probable cause). "Whether a police officer has sufficient probable cause to believe that a suspect is carrying

illegal contraband will depend on the totality of the circumstances existing at the time." *Doctor*, 596 So. 2d at 445.

Although an officer may conduct a more invasive search at the exact spot where the officer observes a "bulge" in clothing and believes a weapon to be concealed, *see Johnson v. State*, 696 So. 2d 1271, 1272-74 (Fla. 5th DCA 1997) (affirming denial of motion to suppress where officer noticed a bulge on defendant's right hip and ordered defendant to raise his hands, thus exposing handle of a large caliber revolver tucked into defendant's waistband), that exception does not apply in this case. Here, the officer offered no testimony that he observed the presence of a bulge at the location where the bag was retrieved, and denied seeing a bulge of any kind anywhere else on appellant's clothing.

In the instant case, the officer stated that he felt a baggie with a "plant-like material" inside appellant's pocket during his pat-down search for weapons. He admitted that he had "no clue what type of plant it was at the time," and, only claimed that he thought it was marijuana based on his "training and experience." There was no testimony that by plain feel the officer was able to develop anything more than an inkling that the bag he felt in appellant's pocket, which did not create a bulge in the clothing, would contain contraband. In other words, the officer's perception that the material in the plastic bag was contraband did not come as a result of his tactile perception, but from an educated hunch based upon the plain feel of the object. *See C.A.M. v. State*, 819 So. 2d 802, 805 (Fla. 4th DCA 2001) (reversing denial of a motion to suppress where officer testified that based on his training and experience he could feel the difference between a plastic bag commonly used for illegal drugs and a pouch commonly used for tobacco, because officer's "unadorned conclusion" that he immediately knew the substance he felt "through the clothing material of the pants and the packaging inside it was—to the exclusion of all of the many other lawful possibilities—marijuana," was insufficient); *see also State v. J.D.*, 796 So. 2d 1217, 1220 (Fla. 4th DCA 2001) (finding the seizure of a plastic bag containing marijuana was improper under the "plain feel doctrine" where officer "merely described the item he felt as a 'plastic-type bag' with 'some substance inside of it' that could possibly be marijuana"); *Meeks v. State*, 356 So. 2d 45, 46 (Fla. 2d DCA 1978) (finding seizure of a bag containing marijuana was impermissible where, during a "standard procedure" frisk, officer felt a "lump approximately five inches long by three inches wide" inside defendant's pocket which he knew was not a weapon, but believed was marijuana).

Accordingly, we reverse the court's decision denying the motion to suppress the drug evidence, as well as appellant's conviction for possession of marijuana, and remand for proceedings consistent herewith.

*Reversed and Remanded.*

TAYLOR and MAY, JJ., concur.

*       *       *

**_Not final until disposition of timely filed motion for rehearing_**