DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**T.T.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-442

[August 29, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacy M. Ross, Judge; L.T. Case No. 17-003976 DLB.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellee.

HARPER, BRADLEY, Associate Judge.

This case presents the question of whether the plain touch exception to the Fourth Amendment permits an officer, without a warrant, to seize objects felt during a weapons search, when the objects are not weapons and there is insufficient evidence of contraband. It does not. We reverse the defendant's conviction.

The following evidence was adduced at a hearing on T.T.'s motion to suppress. While responding to a traffic stop, an officer observed T.T. sitting in the rear passenger seat. The officer engaged T.T. in conversation and observed that T.T. had "slurred speech" and "red bloodshot eyes." The officer did not suspect T.T. of criminal activity; however, the officer noticed that T.T. was nervous and fidgeting with his waistband. Although the officer did not see any weapons, he "[f]igured . . . [T.T.] probably had something there that was a concern."

The officer asked T.T. to step out of the vehicle and place his hands on the trunk. He conducted a "top to bottom" pat-down search for weapons. The officer's search extended to T.T.'s scrotal area where he felt two "hard,"

"cylindrical" objects he believed to be containers. The officer knew the two objects were not weapons. He could not feel what, if anything, was inside the objects. Likewise, there was no testimony that he smelled an odor emanating from the objects. The officer subsequently removed the hard objects from T.T.'s scrotal area and observed a green, leafy substance; he later determined the substance to be marijuana.

At the suppression hearing, the officer testified that he had been involved in "probably 50, 100" stops dealing with drugs. Also, he testified that "[p]robably eight, five percent of those stops involved marijuana." There was no evidence that he had any experience identifying marijuana or illegal cylindrical objects using tactile perception. There was no evidence he had previously stopped a juvenile, or anyone else, who hid a container with drugs in the scrotal area. There was no testimony to detail the experience the officer had, if any, that would allow him to conclude that the illegal nature of the containers was immediately apparent based on tactile perception.

The officer, nevertheless, concluded that juveniles tend to place illegal substances in hard containers and hide the containers in their scrotal area. Based on these conclusions, the officer testified that he "immediately knew" that the objects in T.T.'s scrotal area contained an illegal substance.

T.T. was charged, by petition for delinquency, with possession of cannabis. He filed a pretrial motion to suppress the evidence, arguing that the officer conducted a warrantless search without probable cause in violation of the Florida and United States Constitutions. The trial court denied the motion and T.T. pled no contest to the charges, reserving his right to appeal. On review, this court defers to the trial court's factual findings but reviews legal conclusions de novo. *See State v. Abbey*, 28 So. 3d 208, 210 (Fla. 4th DCA 2010).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. VI. "[N]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 26 (1968) (citing *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)); *see also Minnesota v. Dickerson*, 508 U.S. 366, 379-83 (1993) (Scalia, J. concurring) (noting that there appears to be no clear support at common law for physically searching a suspect absent arrest or the degree of cause needed for that purpose).

2

Thus, searches and seizures conducted, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment except when involving the narrow protective search exception or the narrow plain view and plain touch extensions of that exception. *Horton v. California*, 496 U.S. 128, 134 (1990).

In *Terry v. Ohio*, a plurality of the United States Supreme Court recognized a "narrowly drawn" exception to the warrant requirement permitting officers to briefly stop suspicious persons and make "reasonable inquiries" aimed at confirming or dispelling suspicions. *Terry*, 392 U.S. at 26. Given the danger to policemen during these brief stops the Court construed this authority also to extend to "[a] reasonable search for weapons, where the police officer has reason to believe he is dealing with an armed and dangerous individual." *Id.* Later, the Court noted that the justification of a protective search is gone once it is determined that a suspect is not armed. *See Dickerson*, 508 U.S. at 373 (*citing Sibron v. New York*, 392 U.S. 40, 65–66 (1968)) (finding that when "[t]he protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed").

The plain view exception allows officers to seize contraband if they can view the contraband from a lawful position and the unlawful nature of the contraband is "immediately apparent." *Horton*, 496 U.S. at 134; *Arizona v. Hicks*, 480 U.S. 321, 338 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971). The doctrine, however, may not be used to extend a general exploratory search from one object to another until something incriminating emerges. *Coolidge*, 403 U.S. at 466. Thus, if the incriminating character of the object in "plain view" is not "immediately apparent," without conducting some further search of the object, the plain view doctrine cannot justify its seizure. *Horton*, 496 U.S. at 138.

"[T]he rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Dickerson*, 508 U.S. at 375 (citing *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)); *see also Texas v. Brown*, 460 U.S. 730, 740 (1983).

The plain touch extension arises from the same rationale and practical considerations as the plain view doctrine. *Dickerson*, 508 U.S. at 375. By analogy, the plain touch extension allows officers to seize illegal objects discovered during a protective pat-down search when the illegality of the object is, using the sense of touch, "immediately apparent." *Id.* at 375-

3

Under the circumstances, there is no invasion of a suspect's privacy beyond that already authorized by the officer's search for weapons. *Id.*

With this background in mind, we turn to the application of these doctrines in the instant case. As an initial matter, T.T. does not challenge the validity of the stop or the legitimacy of the officer's pat-down search for weapons. T.T. argues that this Court should reverse the lower court's denial of his motion to suppress because the officer's testimony regarding his training and experience was insufficient to support the conclusion that he was immediately aware, through tactile perception, that the cylindrical objects were illegal. *See Jordan v. State*, 664 So. 2d 272 (Fla. 5th DCA 1995) (the "plain feel" doctrine requires specific expert testimony as to the arresting officer's tactile experience with the particular contraband in question.)

The state argues that the officer's "knowledge," attributable to his training, the feel and location of the objects, and his observations of T.T.'s slurred speech and bloodshot eyes, amounted to a "practical, nontechnical" probability that the objects were contraband. *See Brinegar v. U.S.,* 338 U.S. 160, 176 (1949).

To seize an object under the plain touch exception to the United States Constitution, an officer must know, through the use of tactile perception, that the object is contraband. *G.M. v. State,* 172 So. 3d 963, 968-69 (Fla. 4th DCA 2015). Testimony regarding an officer's training and experience is relevant to explain that the officer has developed the ability to know how the illegal object feels by using the sense of touch. *Doctor v. State,* 596 So. 2d, 445 (Fla. 1992).

Accordingly, "[t]he State must present more than the naked subjective statement of a police officer who has a 'feeling' based on 'experience' . . ." to support a seizure under the plain touch extension. *Id.*

In *G.M.*, this court considered whether the trial court erred in refusing to suppress marijuana found in a juvenile's pocket during a weapons search. *G.M. v. State,* 172 So. 3d at 968-69. G.M. was the passenger in a stolen vehicle. The arresting officer removed G.M. from the vehicle and conducted a protective pat-down search. The arresting officer testified that he felt a baggie containing plant-like material in G.M.'s pocket which, based on his training and experience, he believed to be marijuana. *Id.* This Court reversed the trial court's denial of the motion to suppress the evidence because the testimony that the officer believed the substance was marijuana amounted to no more than a hunch. *Id.*

4

This Court reasoned that "[t]he officer's perception that the material in the plastic bag was contraband did not come as a result of his tactile perception, but from an educated hunch . . . ." *Id.* (citing *C.A.M. v. State*, 819 So. 2d 802, 805 (Fla. 4th DCA 2001) (reversing denial of a motion to suppress where the officer's unadorned conclusion was that he immediately knew the packaging in the defendant's pocket contained marijuana); *State v. J.D.*, 796 So. 2d 1217, 1220 (Fla. 4th DCA 2001) (officer stated substance could possibly be marijuana); *Meeks v. State*, 356 So. 2d 45, 46 (Fla. 2d DCA 1978) (officer stated the lump in defendant's pocket was not a weapon and believed it to be marijuana.).

Thus, the state, in *G.M.*, failed to elicit evidence to explain how the officer's training and experience informed his ultimate conclusion that the plantlike material was marijuana. *G.M.*, 172 So. 3d at 968-69; *see also Doctor*, 596 So. 2d at 445 (Fla. 1992) (noting that "[n]ot all concealed objects in a person's possession are contraband.").

Similarly, Florida courts have declined to find probable cause when an object, commonly used for drugs, is seen or touched. *Caplan v. State*, 531 So. 2d 88 (Fla. 1988) (several small rolled burnt cigarette wrappings on the floor of defendant's automobile did not provide probable cause of marijuana), *cert. denied*, 489 U.S. 1099, (1989); *Walker v. State*, 514 So. 2d 1149 (Fla. 2d DCA 1987) (plain view of pipe did not constitute probable cause to arrest for possession of paraphernalia).

Here, the state failed to elicit evidence regarding the officer's experience with drug containers and his prior use of tactile perception to identify contraband. The officer did not feel any plantlike material in T.T.'s pants. Moreover, he did not testify regarding his experience with containers during drug arrests.

The Florida Supreme Court in *Doctor v. State* evaluated whether an officer's testimony was sufficient to support the seizure of a bag of crack cocaine hidden in a suspect's groin area. The Court noted as follows:

> [D]eputy Aprea testified that he had made approximately 250 arrests for possession of a controlled substance, had been present during approximately 1000 arrests and had seen or felt crack cocaine approximately 800 times. He further stated that during the course of 130 search warrant arrests, he had discovered cocaine hidden in the groin area on 70 occasions. Thus, Deputy Aprea's testimony regarding his experience in apprehending drug offenders went well beyond a generalized statement or mere conclusion that he was an experienced

5

officer. Rather, he offered specific statistics evidencing his significant experience with this particular aspect of drug trafficking. Deputy Aprea concluded that in this case he believed the object he felt was crack cocaine because of "[b]eing in contact with it so many times, the texture of it, the texture of the plastic bag that it's in, the little rock formations of it, it was-if you could imagine, it was almost like a peanut brittle type feeling in it."

*Doctor*, 596 So. 2d at 445.

The Court reasoned that Deputy Aprea's testimony was more than a mere generalized statement in support of probable cause. *Id.* Accordingly, the Court found that the trial court correctly denied the defendant's motion to suppress. *Id.* The Court noted that the officer's testimony was sufficient to conclude that "[D]eputy Aprea had knowledge acquired through specific experience with the unique texture of crack cocaine as well as with this type of concealment." *Id.* at 445.

Here, the officer's testimony regarding his training and experience was not sufficient for the lower court to determine that his conclusion was more than a "feeling" or a "hunch." *See Steadman v. State*, 997 So. 2d 1258, 1260 (Fla. 5th DCA 2009) (holding that if the officer "discover[s]" the item's identity as contraband only after removing it from the defendant's person, the seizure "runs afoul of the dictates of *Dickerson*"). Although the officer testified that juveniles hide drugs in the scrotal area, his conclusory statement without more is the type of bare, subjective statement that this Court has held to be insufficient to overcome the protections of the Fourth Amendment. *See State v. J.D.,* 796 So. 2d 1217, 1219 (Fla. 4th DCA 2001) (citing *Doctor*, 596 So. 2d at 445 (noting that "[t]he state must present more than the "naked subjective statement of a police officer who has a 'feeling' based on 'experience'" that the item was contraband).

In making probable cause determinations, courts must conscientiously evaluate the sufficiency of evidence and decline to ratify naked conclusions or the use of "buzz words" that imply certainty. *See, e.g., State v. Rabb*, 920 So. 2d 1175, 1181 (Fla. 4th DCA 2006) (quoting *Illinois v. Gates,* 462 U.S. 213, 239 (1983)).

Accordingly, we reverse the trial court's decision denying the motion to suppress, and this case is remanded for the trial court to grant the motion and suppress the fruits of the search.

*Reversed and remanded.*

MAY, J., concurs.
CIKLIN, J., dissents with opinion.

CIKLIN, J., dissents.

I would affirm. According to his testimony, the officer's pat-down led him to discover cylindrical containers hidden in T.T.'s groin area, and his experience taught him that young people often hide drugs in these types of containers and in the groin area. Also, the pat-down must be viewed in light of the officer's prior observation of T.T. fidgeting with his pants, and of his slurred speech, red and bloodshot eyes, and nervous demeanor. Armed with this knowledge, the totality of the circumstances provided the officer with a reasonable certainty that the canisters he felt in T.T.'s groin area contained contraband. *See Harris v. State*, 790 So. 2d 1246, 1249 (Fla. 5th DCA 2001) (noting probable cause arises where an officer feels an object that he or she is "reasonably certain . . . is contraband").

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***